**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PEANUTS WORLDWIDE LLC,

               Plaintiff,

v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

               Defendants.

Case No. 21-cv-05863

**Judge Andrea R. Wood**

**Magistrate Judge Sunil R. Harjani**

**PLAINTIFF'S RESPONSE IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

Plaintiff Peanuts Worldwide LLC ("Plaintiff" or "Peanuts"), by its counsel, submits the following Response in support of Plaintiff's Motion for Entry of a Preliminary Injunction [33].

## BACKGROUND

The PEANUTS comic strip is not only one of the best-loved comic strips in history, but a true global phenomenon. Complaint [1] at ¶ 5. PEANUTS products include games and other toys such as playsets, playing cards, and stuffed toys; household items such as holiday ornaments, bathroom products, stationery and bed linens; clothing and jewelry (collectively, the "PEANUTS Products"). *Id*. at ¶ 8. Plaintiff incorporates a variety of distinctive marks in the design of its various PEANUTS Products, including its famous PEANUTS mark, SNOOPY mark, CHARLIE BROWN mark, and various copyrighted designs (the "Peanuts Copyrighted Designs"). *Id*. at ¶¶ 10, 14. Plaintiff's marks have been registered with the United States Patent and Trademark Office (the "PEANUTS Trademarks"). *Id*. at ¶ 12. The PEANUTS Trademarks have been continuously used and never abandoned. The innovative marketing and product designs of the PEANUTS Products have enabled the PEANUTS brand to achieve widespread recognition and fame and have made the PEANUTS Trademarks some of the most well-known marks in the industry. The famous Peanuts brand has become immensely popular and has been extensively promoted and advertised at great expense. *Id.* at ¶ 16.

Defendant ying she ji ("Defendant") operates an interactive e-commerce store named "ying she ji" on the Amazon.com platform ("Defendant's E-Commerce Store"). Declaration of Justin R. Gaudio ("Gaudio Decl.") at ¶ 2. Defendant's E-Commerce Store advertised, offered for sale, and sold at least the product shown in Figure 1 bearing infringing and counterfeit versions of the PEANUTS Trademarks and unauthorized copies of the Peanuts Copyrighted Designs ("Unauthorized Peanuts Products"). *Id.; see* Figure 1 *infra*. To ensure that consumer searches for

Peanuts Products lead to Defendant's E-Commerce Store, Defendant used the PEANUTS Trademarks to advertise, offer for sale, and sell counterfeit Peanuts Products, including the Unauthorized Peanuts Products. *Id.* Plaintiff has not licensed or authorized Defendant to use any of the PEANUTS Trademarks or copy or distribute the Peanuts Copyrighted Designs and Defendant is not an authorized retailer of genuine Peanuts Products. [1] at ¶ 25.



*Figure 1 – Defendant's Unauthorized Peanuts Product*

Plaintiff filed this action on November 2, 2021 [1]. On November 10, 2021, this Court entered a Temporary Restraining Order[1] ("TRO") enjoining Defendant's offering for sale of infringing Peanuts products and restraining funds in Defendant's Amazon account ("Defendant's Amazon Account"). [27]. On November 11, 2021, Plaintiff served the TRO on Amazon and learned that Defendant's E-commerce Store was registered using the email address scyxh@126.com. *See* Gaudio Decl. at ¶ 3. The information provided by Amazon also showed Defendant's Amazon Account had a restrained balance of $42,577. *Id.* Pursuant to the TRO,

---

[1] The TRO was subsequently extended on November 29, 2021 [32], and remains in place pending resolution of Plaintiff's pending Motion for Entry of a Preliminary Injunction [33]. *See* [39].

Plaintiff served Defendant on December 3, 2021 via e-mail at scyxh@126.com. *See* [36]. On November 15, 2021 Defendant filed its Opposition to Plaintiff's Motion for Entry of a Preliminary Injunction ("Defendant's Opposition"). *See* [41].

## ARGUMENT

Plaintiff continues to satisfy all of the elements required for a Preliminary Injunction, including showing a strong likelihood of success on the merits and irreparable harm. *See* [27]. Additionally, the balance of harms remains in Plaintiff's favor. Without the asset restraint in place, Defendant is likely to move any restrained assets offshore and Plaintiff would be prevented from realizing its right to final equitable relief of an accounting of profits. Conversely, Defendant seeks to dissolve the asset restraint based on its own self-serving statements prior to discovery and without being subject to cross-examination.

Specifically, Defendant has failed to meet its burden to present documentary proof that the assets in Defendant's Amazon Account are not the proceeds of infringing sales. For example, to determine how many infringing products were sold on Defendant's E-Commerce Store or any of the other e-commerce stores that Defendant may operate, Defendant's only search was for products with the Amazon Standard Identification Number ("ASIN") B09FLJ621M. [41] at p. 2. Defendant claims that this search yielded only two results. *Id.* However, e-commerce counterfeiters like Defendant frequently use various different ASINs to sell the same Unauthorized Peanuts Products.[2] *See* Gaudio Decl. at ¶ 10; [17].

Similarly, Defendant does not provide credible information to characterize the type of products sold that make up the current restrained sum or any other revenue Defendant's Amazon Account received. Defendant claims that the frozen funds were generated from the sale of

---

[2] For instance, in this case alone, there are over one hundred Seller Aliases operating Amazon stores selling nearly identical Unauthorized Peanuts Products to that of Defendant (Halloween Tree Decorations). Gaudio Decl. at ¶ 10. Only two listings share the same ASIN. *Id.*

kitchen devices and household cleaners [41] at p. 3. In support, Defendant cites to a spreadsheet that allegedly shows all sales by Defendant's E-Commerce Store. [41-2] at Exhibit F. However, without images of the listings, there is no way to determine if other transactions were for products bearing the PEANUTS Trademarks and Peanuts Copyrighted Designs. As such these selective, incomplete, and unverified screenshots are insufficient to meet Defendant's burden. Additionally, Defendant does not link the screenshots to the frozen funds.

Additionally, Defendant presents no credible evidence that it is suffering any harm from the injunction. For example, Defendant claims, without evidentiary support, that it needs the money in the account to purchase other products and pay employees' salaries. *See* [41] at pp. 3, 7. Defendant further claims, without evidence or explanation, that it is an "inordinate hardship" on Defendant for its account to remain frozen.[3] *Id.*

Defendant has also admitted to spoliation, including deleting infringing images from its listings in response to notice of litigation. Declaration of Junjie Deng [41-1] at ¶ 12; [41-2]. Thus, Plaintiff is entitled to a rebuttable presumption that *all* of the products sold by Defendant were Unauthorized Peanuts Products. Finally, Defendant also does not provide any evidence that Amazon is the sole payment method available to its customers, and thus, there may be other methods of payment used by Defendant to sell Unauthorized Peanuts Products.

Courts in this district have regularly denied similar attempts by counterfeiters to dissolve asset restraints. *See, e.g.*, *H-D, U.S.A., LLC v. The Partnerships, et al.*, No. 21-cv-03581 (N.D. Ill. Sep. 24, 2021) (unpublished) (Docket No. 47) (denying dissolution of the asset restraint because Defendant failed to meet its burden to exempt assets—unsupported and incomplete statements and screenshots provided by Defendant are insufficient); *Luxottica Group S.p.A., et*

---

[3] The Proposed Preliminary Injunction only prohibits Defendant from selling Unauthorized Peanuts Products, it does not prevent continued lawful operation of Defendant's E-Commerce Store. *See* [27].

*al. v. The Partnerships, et al.*, No. 18-cv-06608 (N.D. Ill. Jan. 24, 2019) (unpublished) (Docket No. 75) (denying dissolution of the asset restraint); *Gianni Versace, S.p.A. v. ZOU YULAN, et al.*, No. 17-cv-07869 (N.D. Ill. Dec. 4, 2017) (unpublished) (Docket No. 52) (same); *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. Sep. 29, 2015) (same). Defendant's argument should be rejected, or at a minimum, a Preliminary Injunction should be entered until Defendants have answered the Complaint and discovery has taken place.

### ENTRY OF A PRELIMINARY INJUNCTION REMAINS APPROPRIATE

This Court has already found that Plaintiff has satisfied the requirements for entry of a Preliminary Injunction. *See* [27]. Specifically, this Court has found that the following elements were met: (1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiff's favor; and (4) the public interest will not be disserved by the injunction. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). These requirements remain satisfied.

### I. PLAINTIFF HAS SHOWN A HIGH LIKELIHOOD OF SUCCESS ON THE MERITS

#### A. Plaintiff Will Likely Succeed on Its Trademark Infringement, Counterfeiting, and False Designation of Origin Claims

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043

(7th Cir. 2000). Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

i. The PEANUTS Trademarks Are Federally Registered

Regarding the first element, Plaintiff holds U.S. federal trademark registrations for the PEANUTS Trademarks. [1] at ¶ 12. The PEANUTS Trademarks are valid, subsisting, and in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id*. at ¶ 13. The registrations for the PEANUTS Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the PEANUTS Trademarks pursuant to 15 U.S.C. § 1057(b). *Id*. Moreover, U.S. TM Registration No. 1,265,839 for PEANUTS is incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of its validity and Plaintiff's exclusive rights. Plaintiff has not licensed or authorized Defendant to use any of the PEANUTS Trademarks and Defendant is not an authorized retailer of genuine Peanuts products. *Id*. at ¶ 25. Thus, Plaintiff satisfies the first element of its claim.

ii. Defendant Advertised, Offered to Sell, and Sold Unauthorized Peanuts Products in Commerce without Plaintiff's Authorization

Defendant advertised, offered for sale, and sold products using the PEANUTS Trademarks via Defendant's E-Commerce Store. Gaudio Decl. at ¶ 2. Defendant is not an authorized retailer of genuine Peanuts products, and the Unauthorized Peanuts Products advertised, offered for sale, and sold using the PEANUTS Trademarks on Defendant's E-Commerce Store are not genuine Peanuts products. *Id*.; [1] at ¶ 25. The Seventh Circuit has held that where, as here, "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007); *see also NBA Props., Inc., et al. v. Yan Zhou, et al.*, 2017 U.S. Dist. LEXIS 148971, at *5 (N.D. Ill. Sept. 14,

2017) (internal citation omitted). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the PEANUTS Trademarks.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" its products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Plaintiff has submitted evidence showing that Defendant is using counterfeit versions of the PEANUTS Trademarks on products not manufactured or licensed by Plaintiff. *See* Gaudio Decl. at ¶ 2; [1] at ¶ 25. Both Plaintiff and Defendant sell products bearing the PEANUTS Trademarks to the same consumers, targeting those consumers searching for genuine Peanuts products. [16] at ¶¶ 8, 20-22. Thus, consumers searching for genuine Peanuts products (who are diverse with varying degrees of sophistication) are likely to have difficulty distinguishing genuine Peanuts products from Defendant's Unauthorized Peanuts Products, which are not licensed or manufactured by Plaintiff. This is particularly true in this case where Defendant's Unauthorized Peanuts Products were offered for sale, and sold on the Internet, where consumers cannot inspect the physical product.

Moreover, Plaintiff does not need to prove actual consumer confusion; rather it only needs to show a likelihood of confusion exists, particularly given the compelling evidence that Defendant is attempting to "palm off" its goods as genuine Peanuts products by using the

PEANUTS Trademarks. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). In addition to point-of-sale confusion about the source of products sold on the Defendant's E-Commerce Store, the Seventh Circuit has recognized that the Lanham Act's protections also extend to post-sale confusion of potential customers. *Id.* at 683. Post-sale confusion refers to a situation in which, for example, a potential customer sees a product bearing the infringing label used by others and mistakenly attributes the product to the brand owner, thereby influencing his buying decision, either positively or negatively. *Id.* That association also constitutes infringement of the PEANUTS Trademarks. *Id.* Here, because of the Defendant's unlawful use of the well-known PEANUTS Trademarks, that association is likely to result.

### iii.   Defendant's Use Was not Fair

The federally registered PEANUTS Trademarks provide Plaintiff with the exclusive right to use these marks in connection with the sale of authorized genuine products. Likewise, Defendant's use of Plaintiff's registered trademarks to sell counterfeit and Unauthorized Peanuts Products is not a fair use. To prevail on a fair use defense, Defendant must show that: (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith. *Sorenson v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). Defendant has not met this burden since the mark was not used fairly and in good faith. Defendant used the PEANUTS Trademarks, including in the item title, to advertise, offer for sale, and sell Unauthorized Peanuts Products. Defendant is inducing consumers to think that Defendant's Unauthorized Peanuts Products are sourced from, associated with, authorized by, sponsored by, or otherwise affiliated with Peanuts when they are not. *See* Gaudio Decl. at ¶ 2 (Figure 1); *Luxottica Grp. S.p.A. v. Li*, No. 16 CV 487, 2017 U.S. Dist. LEXIS 21818, at *8 (N.D. Ill. Feb. 15, 2017) (finding that because "defendant placed the mark in the title of the product listing, where a consumer might expect to find a brand name, consumers would be likely

to attribute both defendant's products and genuine Luxottica products to the same source"); *Chloe SAS v. Sawabeh Info. Servs. Co*, 2014 U.S. Dist. LEXIS 124433, at *18 (C.D. Cal. Sep. 5, 2014) (finding that using a trademark in the product title constitutes trademark counterfeiting and confirming that "a protected mark need not appear 'on' the good offered for sale; it must only be used 'in connection with' the sale"). Defendant cites *Tiffany & Co. v. Costco Wholesale Corp*., but the issue in that case was whether the term "Tiffany" was descriptive for a type of ring setting. *Tiffany & Co. v. Costco Wholesale Corp*., 971 F.3d 74, 82 (2d Cir. 2020).

Defendant's use of other marks or brands, in addition to the PEANUTS Trademarks, does not negate its use of the PEANUTS Trademarks from being a trademark use. *See World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 843 (N.D. Ill. 2005). In fact, Defendant's use of its alleged brand with the PEANUTS Trademarks "may actually increase the misappropriation by linking defendant's name to plaintiff's goodwill." *Sands, Taylor Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992); *see also Int'l Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir. 1988) (argument that defendant's use of its mark in conjunction with plaintiff's mark decreases likelihood of confusion is a "smokescreen and a poor excuse for the defendants' blatant misappropriation of the plaintiff's name.") Here, Defendant does not (and cannot) use the PEANUTS Trademarks to describe any characteristic of the goods. Accordingly, Plaintiff continues to have a likelihood of success on all claims, including trademark counterfeiting and Defendant's use is not a fair use.

### B. Plaintiff Will Likely Succeed on Its Copyright Infringement Claim

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to Plaintiff under the Copyright Act are the exclusive

rights to reproduce, prepare derivative works of, distribute copies of, and display the Peanuts Copyrighted Designs to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, Courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

With respect to the first element, Plaintiff is the owner of at least three relevant federally registered copyrights. As to the second element, Defendants are willfully and deliberately reproducing the Peanuts Copyrighted Designs in their entirety, and are willfully and deliberately distributing copies of the Peanuts Copyrighted Designs to the public by sale, including the Unauthorized Peanuts Products. Defendants' unauthorized copies are identical or substantially similar to the Peanuts Copyrighted Designs. Such blatant copying infringes upon Plaintiff's exclusive rights under 17 U.S.C. §§ 106. As such, Plaintiff continues to show a likelihood of success on the merits for its copyright infringement claim. Moreover, Defendant has admitted as such. *See* [41] at p. 4.

## II. PLAINTIFF DOES NOT HAVE AN ADEQUATE REMEDY AT LAW AND WILL SUFFER IRREPARABLE INJURY WITHOUT THE PRELIMINARY INJUNCTION

"A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a…likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order. 15 U.S.C. § 1116(a). Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to the benefit of the rebuttable presumption of irreparable harm under Section 1116(a). Defendant has failed to rebut that presumption. Moreover, the Seventh Circuit has clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no legal remedy. *See Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc*., 735 F.3d 735, 740 (7th Cir. 2013) ("irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial)"); *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001). Likewise, an injury to a copyright holder that is "not easily measurable in monetary terms, such as injury to reputation or goodwill, is often viewed as irreparable." *EnVerve, Inc. v. Unger Meat Co*., 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011).

Plaintiff has expended millions of dollars annually in advertising, promoting and marketing featuring the PEANUTS Trademarks. [1] at ¶ 16. As such, the goodwill associated with the PEANUTS Trademarks is of incalculable and inestimable value to Plaintiff. *Id.* Defendant's attempt to "piggyback" off Plaintiff's efforts through the unauthorized use of the PEANUTS Trademarks has and continues to irreparably harm Plaintiff through diminished

goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *See* [14] at ¶¶ 29-34. The extent of the harm to Plaintiff's reputation and the goodwill associated therewith and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendant's infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, loss, or damage without the Preliminary Injunction: "[l]ike trying to un-ring a bell, trying to 'compensate' after the fact for damage to business goodwill and reputation cannot constitute a just or full compensation." *Adidas Am., Inc. v. Skechers USA,, Inc.*, 149 F. Supp. 3d 1222, 1249 (D. Oregon 2016) (citing McCarthy on Trademarks § 30:46).

## III.   THE BALANCE OF HARMS REMAINS IN PLAINTIFF'S FAVOR

The balance of harms remains in Plaintiff's favor. Defendant argues that since it is no longer selling the allegedly infringing products, an injunction is no longer necessary. [41] at p. 7. A defendant "faces a heavy burden to establish mootness [of an injunction] in such cases because otherwise they would simply be free to return to their old ways after the threat of a lawsuit has passed." *Rebel Debutante LLC v. Forsythe Cosmetic Group, Ltd.*, 799 F. Supp. 2d 558, 567 (M.D. N. Cal. 2011) (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001)). Bald assertions by a defendant that it will not sell infringing products again are not enough to carry this heavy burden and, in the context of an infringement action, such

assertions standing alone cannot eliminate the plaintiff's reasonable expectation that the alleged violation will recur in the absence of a court order. *Id*. Instead, to render the need for an injunction moot, the reform of the defendant must be irrefutably demonstrated and total, and if there is a substantial possibility that the act sought to be enjoined may be repeated, the matter is not necessarily mooted. *Cherokee Inc. v. Wilson Sporting Goods Co.*, 2015 U.S. Dist. LEXIS 82915, at *8 (C.D. Cal. June 25, 2015) (citing McCarthy on Trademarks and Unfair Competition § 30:11); *see also Bulgari S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *8-9 (N.D. Ill. Oct. 15, 2015) ("Li's only opposition to such an injunction is that Bulgari has failed to establish a threat of future continued infringement. Such a showing, however, is unnecessary for this Court to grant a permanent injunction. Moreover, in light of Li's willful infringement this Court does perceive such a threat."). If Defendant has truly voluntarily ceased its infringing conduct and has no interest in selling Unauthorized Peanuts Products, an injunction would be an insignificant burden on Defendant. *See Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, 2015 U.S. Dist. LEXIS 75916, at *89-90 (N.D. Ill. June 11, 2015).

Moreover, in assessing the risk of irreparable harm to Defendant, the Court should "exclude any burden it voluntarily assumed by proceeding in the face of a known risk." *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 U.S. Dist. LEXIS 144660, at *28 (N.D. Ill. Oct. 19, 2016). Conversely, without the asset restraint in place, Defendant is likely to move any restrained assets offshore and Plaintiff would be prevented from realizing its right to final equitable relief of an accounting of profits. *See* Gaudio Decl. at ¶¶ 4-8. Accordingly, the balance of harms continues to favor Plaintiff.

## IV. THE ASSET RESTRAINT REMAINS APPROPRIATE

A restraint on assets is proper if a suit seeks equitable relief. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002); *cf. Grupo Mexicano de Desarrollo, S.A. v. Alliance*

*Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (district court may not issue an injunction freezing assets in an action for money damages where no equitable interest is claimed). Plaintiff seeks equitable relief. Section 35 of the Lanham Act provides that a plaintiff in a trademark infringement suit shall be entitled "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (emphasis added). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id*. Additionally, subsection (c) provides that "plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages….as the court consider just." 15 U.S.C. § 1117(c).

Similarly, the United States Copyright Act provides that a plaintiff in a copyright infringement suit is entitled to recover "… any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). Plaintiff's Complaint [1] includes, among other relief, a claim for an accounting of Defendant's profits. An accounting of profits is an equitable remedy. *Gucci Am. v. Bank of China*, 768 F.3d 122, 130-133 (2d Cir. 2014).

The burden to prove "the amount of any continued asset freeze" and "the statutory burden of proving sales [is] placed squarely upon" the party seeking relief, *i.e.*, Defendant, to present documentary proof that particular assets are not the proceeds of counterfeiting activities. *Luxottica USA LLC v. The Partnerships, et al.,* 2015 U.S. Dist. LEXIS 78961, at *11 (N.D. Ill. June 18, 2015) (citing *N. Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist. LEXIS 14226, at *11 (S.D.N.Y. Mar. 30, 2006)); *H-D, U.S.A., LLC v. The Partnerships, et al.*, No. 21-cv-03581 (N.D. Ill. Sep. 24, 2021) (unpublished) (Docket No. 47).

14

Defendant has failed to meet its burden—Defendant has not produced documentary proof that the transactions processed through Defendant's Amazon Account for the restrained balance are not the proceeds of infringing activities. Defendant provides no reliable evidence or explanation regarding the search methodology used to determine how many infringing products were sold on Defendant's E-Commerce Store. Defendant has also failed to produce credible evidence characterizing the transactions or products attributed to revenue received by Defendant's Amazon Account, if any, that is not part of the restrained balance. Defendant has only presented conclusory statements, accompanied by unverified and incomplete exhibits. *See* [41]. Moreover, Defendant has admitted to destroying incriminating evidence. [41-1] at ¶ 12. Defendant has also failed to provide any representation regarding other e-commerce stores that it may be operating. It is quite possible that Defendant has sold unauthorized and counterfeit Peanuts products though e-commerce stores that have not yet been identified. Courts have maintained asset restraints where defendants failed to meet their burden to present documentary evidence that particular assets are not the proceeds of counterfeiting activities. *See H-D, U.S.A., LLC v. The Partnerships, et al.*, No. 21-cv-03581 (N.D. Ill. Sep. 24, 2021) (unpublished) (Docket No. 47); *Gianni Versace, S.p.A. v. ZOU YULAN, et al.*, No. 17-cv-07869 (N.D. Ill. Dec. 4, 2017) (unpublished) (Docket No. 52).

For these reasons, Defendant has failed to meet its burden, and the asset restraint on Defendant's Amazon Account remains proper.[4]

## **CONCLUSION**

Accordingly, Plaintiff respectfully requests that this Court enter the preliminary injunction against all Defendants, including Defendant ying she ji.

---

[4] Alternatively, Plaintiff intends to move to keep assets restrained under Fed. R. Civ. P. 64. *See M.S. Distrib. Co. v. Web Records, Inc.*, 2003 U.S. Dist. LEXIS 9092, at *4 (N.D. Ill. May 30, 2003).

Dated this 21st day of December 2021.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Isaku M. Begert
Marcella D. Slay
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
ibegert@gbc.law
mslay@gbc.law

*Counsel for Plaintiff Peanuts Worldwide LLC*

16